# COUNTY OF OXFORD.

41  177
85  528
41  177
87  563
41  177
96  280

MOSES HAMMOND *versus* GEORGE W. WOODMAN *& als.*

A manufacturing corporation conveyed certain property to A., with the following exception: — " Excepting also and reserving the right at all times to take and use water sufficient to drive the factory and machinery attached," &c.* Afterwards, the corporation conveyed to B., certain other real estate, with their factory, machinery, &c., which conveyance A. joined in by separate deed. A. had attached to the factory flume, spouts through which he drew water to run his own mills, which B. cut off. — *Held*, that the reservation in the deed to A., of the right " at all times to take and use water sufficient to drive the factory and the machinery attached," as between the parties thereto, *is as effectual to secure to the company the right reserved, together with the easement and servitude, so as to charge the lands of A., as by a deed from the owner of the land to be charged granting the same as appurtenant to other estate of the grantee.*

And this especially when A. himself conveys by his own deed the whole interest reserved.

The grant of a principal thing carries with it all that is necessary for the beneficial enjoyment of the grant, which the grantor can convey.

---

* Know all men by these presents, That we, the South Paris Manufacturing Company, doing business at South Paris, in Paris in the county of Oxford, in consideration of the sum of four thousand five hundred dollars paid by Moses Hammond, of said Paris, Gentleman, the receipt whereof we do hereby acknowledge, do hereby give, grant, bargain, sell and convey unto the said Hammond, his heirs and assigns forever, all the real estate belonging to us, the said company, that lies on the northerly side of the road leading over the bridge at South Paris as traveled at the present time, and on the east side of Little Androscoggin river, viz.: the grist-mill, saw-mill, factory store, shingle machine, and all the apparatus and utensils thereto belonging. Said land is bounded southerly on said road; easterly by the lot formerly owned by Abijah Hall, now occupied by Jonas Hamilton; on the north by Stony brook including a point of land sometimes overflowed or made an island by high water; and on the west by Charles H. Crocker's mill privilege and his rights; excepting and reserving the large wool building and wood-house attached to the store, one small dry house, one storehouse and wool form, but not the land on which they stand, which buildings are to be removed from the land in a reasonable time after request by said Hammond: *excepting also and reserving the right at all times to take and use water sufficient to drive the factory and machinery attached. Said Hammond is to maintain one quarter part of the dam across the said river, and the bulkhead at the head of the grist-mill and one quarter part of the protection wall, and said company are to maintain the bulkhead at the head of the factory flume, and one half of the dam across said river. Said Hammond is to use the water to drive*

If the attachment of spouts to the factory flume, disturbed the right of B. "at all times to take and use water sufficient to drive the factory," &c., then he had authority to cut them off.

A., in an action against B., cannot be permitted to prove that his own deed to B. was without consideration, when it purports to be for consideration.

Persons who have been many years engaged in building and carrying on mills are experts in their business and their testimony as such is admissible.

ON EXCEPTIONS from *Nisi Prius*, CUTTING, J., presiding.

This was an action of trespass on the case for cutting off the spouts to the plaintiff's shingle machine, corncracker, &c. and for preventing and obstructing him from replacing them, and thus depriving him of the use of the water to operate the same.

The facts are fully stated in the opinion of the Court.

The verdict was for the defendants. The plaintiff excepted to certain rulings and instructions of the presiding Judge, which are stated in the opinion, and also moved, that the verdict be set aside as against evidence, and the weight of evidence, &c. He also moved that judgment be entered for the plaintiff "notwithstanding the verdict," for the following reasons:

1. Because it appears by the title deeds of Woodman, True & Co., under which the defendants attempt to justify, and by the title deed of the plaintiff, and which said several deeds form a part of the case, that the plaintiff by the true

---

*his mills and any machinery, at all times, until it comes down to the lowest place in the dam, as ascertained by the measurement of John Howe in the year* 1848, *and then the saw-mill is to stop. But he is also to have the right to use the water after that, so long as he can do it without impeding the speed and usefulness of the factory.*

*To have and to hold,* the aforegranted and bargained premises, with all the privileges and appurtenances thereof, to the said Hammond, his heirs and assigns, to their use and behoof forever. And we do covenant with the said Hammond, his heirs and assigns, that we are lawfully seized in fee of the premises; that they are free of all incumbrances; that we have good right to sell and convey the same to the said Hammond to hold as aforesaid; and that we and our successors and heirs, shall and will warrant and defend the same to the said Hammond, his heirs and assigns forever, against the lawful claims and demands of all persons.

*In witness whereof,* we the said South Paris Manufacturing Company, by William Deering, our agent and attorney for this purpose, have hereunto set our hand and seal corporate the 29th day of June, in the year of our Lord one thousand eight hundred and forty-nine.

                    *South Paris Manufacturing Company,*
                         by WM. DEERING, Agent. [L. S.]

legal construction thereof is entitled and was then and there entitled to have and enjoy the rights of the water according to the allegations of his writ.

2. And he further moves the Court, that judgment may be entered for the plaintiff "notwithstanding the verdict," because, he says, that it appears by the justification set up by the said defendants, and each of them, in their brief statements pleaded in said case, that the acts complained of in the plaintiff's writ and declaration are admitted, and that the said brief statements, or either of them, do not contain any legal answer or justification to the plaintiff's claim aforesaid.

3. Because it appears by the pleadings, and the said several deeds aforesaid, that the plaintiff and not the defendants or either of them is entitled to judgment.

*N. Clifford* and *W. K. Kimball,* for plaintiff.

The words of the reservation, in the deed to the plaintiff, are as follows:—" excepting also, and reserving, the right at all times to take and use water sufficient to drive the factory and machinery attached."

Other portions of the deed must be considered in order to understand the limitations and qualifications annexed to that reservation, and to ascertain the intention of the parties to the grant.

Each of the three clauses next succeeding are important in this point of view.

The first clause describes in general terms the burdens incident to the entire estate, and distributes and apportions to each of the parties his proportion of the same, leaving one fourth part of the dam to be maintained by the owner of the western bank of the stream.

It is impossible, we think, to collect the intention of the parties without giving particular attention to this clause of the deed, and especially to that portion of it imposing the obligation upon the plaintiff to maintain one quarter part of the protection wall. That wall commences in the pond, above the dam, just east of the factory flume, and extends southerly across the highway to the factory, running parallel

with the flume its whole length, and constitutes the eastern foundation on which the factory rests.

It is inconceivable that any portion of the burden of maintaining that wall should have been imposed upon the plaintiff, unless it was within the contemplation of the parties that he was interested in the preservation of the factory flume.

The next clause in the deed is the one in respect to which the Judge instructed the jury that " it had reference to the use of the water by the grantee, from the dam and not from the factory flume."

It reads as follows :— " Said Hammond is to use the water to drive his mills and any machinery, at all times, until it comes down to the lowest place in the dam, as ascertained by the measurement of John Howe in the year 1848, and then the saw-mill is to stop."

1. We insist that it is not correct to say that this clause of the deed has reference to the use of the water by the grantee, from the dam and not from the factory flume, and if so, then clearly the plaintiff is entitled to a new trial on account of the erroneous instruction of the Judge to the jury.

There are no words in the deed to warrant any such construction, and in the absence of any such words to justify that conclusion, it is much more reasonable to conclude that the parties had reference to the use of the water, according to the then existing state of things. *Davis* v. *Muncey*, 38 Maine, 92.

The water to drive the shingle machine and corncracker was then taken from the factory flume, and the necessary apparatus for that purpose was then in existence and in constant use, and had been so for twenty years.

All the apparatus of the mills and the means of working them, such as the gates and penstocks, are as much a part of the realty as the mills themselves or the soil under them, and passed by the deed to the plaintiff as effectually as the land on which they were situated. Both in common sense and legal interpretation, a mill does not mean merely the building in which the business is carried on, but includes the site, dam

and other things connected with the freehold and necessary to its use and enjoyment. *Whitney* v. *Olney*, 3 Mason, 280; Ang. on Wat. Cour. § 156.

It is difficult therefore to see on what the conclusion is based, that "the subsequent clause in the deed had reference to the use of the water by the grantee, from the dam and not from the factory flume," unless it proceeds upon the ground that the factory flume was reserved in the deed as the exclusive property of the company, and if so, we submit with confidence that it is error.

Were it not for the clause distributing the burden of maintaining the works, there would be good reason to contend that all that part of the flume situated north of the highway passed to the plaintiff, and that the factory of the defendants, instead of the plaintiff's mills, was left dry and without any right to the use of this flume.

But it is not so, as will be seen by reference to the clause of the deed just mentioned. It is true that, according to that clause, the defendants are required to maintain but one half of the dam across the river, undoubtedly for the reason that the owner on the west side is obliged to maintain one quarter, yet we think, by a reasonable construction, the defendants are obliged to maintain three-fourths of the factory flume.

The east bank belongs entirely to the plaintiff and defendants, and it being provided that only one quarter part of the dam, and one quarter part of the protection wall, should be maintained by the plaintiff, it would seem to follow that the residue, belonging exclusively to the defendants, should be maintained by them.

The flume is as much a part of the dam as the capsill or foundation upon which it rests, and as such the plaintiff is as clearly bound to maintain one quarter part of it, as of any other part of the dam. *Kennedy* v. *Scovil*, 12 Conn. 317; Ang. on Wat. Cour. § 159, p. 194, § 185, p. 223.

It is undoubtedly proper to take into consideration the condition of the property, and the circumstances of the parties at the time of the conveyance, for the purpose of ascer-

taining what the parties really intended by a reservation in a grant of a water course. *Sumner* v. *Williams*, 8 Mass. 162; Ang. on Wat. Cour. § 185, p. 222; *Kennedy* v. *Scovil*, 12 Conn. 317; *Deshon* v. *Porter*, 38 Maine, 293.

That the plaintiff has an unrestricted right to the use of the water until it comes down to the lowest place in the dam as ascertained by the measurement of John Howe in 1848, is strongly confirmed by the last descriptive clause of the deed.

It reads as follows:—"But he is also to have the right to use the water after that, so long as he can do it *without impeding the speed* and usefulness of the factory."

When the company sold to the plaintiff, it was in fact a division of the property on the east side of the river, and some of the provisions of the plaintiff's deed may be regarded in the nature of a compact between the parties to regulate its future use. It is, in effect, an agreement that there is water enough to carry all the works until it comes down to the point before mentioned, and then the saw-mill is to stop, but the plaintiff may still use the water to drive the residue of his machinery, provided in so doing he does not impair the defendant's rights.

But if the use of the water after that will impede the speed and usefulness of the factory, then the saw-mill must stop and *perhaps also* his other mills.

We do not admit, that even then his other mills must stop, but submit that point to the consideration of the Court.

More than one-half the length of the factory flume is situated on the north side of the highway, and on the premises conveyed by absolute deed to the plaintiff, "to have and to hold, the aforegranted and bargained premises, with all the privileges and *appurtenances* thereof, to the said Hammond, his heirs and assigns, to their use and behoof forever."

Whatever rights the defendants have to the use of the water of that stream, they are all derived from the following clause in their deed from the company, to wit: "together with all the water privileges on the east side of said river, owned by said company, subject to all the duties, limitations

and restrictions pertaining to the same, as by the deeds of the same will appear, reference being had thereto."

The most that can be said of the deed is, that it conveys to the defendants the reservation to the company before mentioned in the plaintiff's deed, whatever it is, and it is expressly made subject to all the duties, limitations and restrictions pertaining to the same.

At that time, and for years before, the plaintiff's spouts and penstocks had been inserted into the factory flume, and through that means the water had been used to drive his shingle machine and corncracker, and it is difficult to see how the defendants under that deed acquired any right to deprive him of the privilege.

Some further confirmation of the unity of interest in the water and in the factory flume, is derived from the subsequent clause of the defendants' deed, which also may be regarded in the light of a compact of the defendants with the company for the benefit of the plaintiff to whom they had previously conveyed. It provides that they, defendants, shall keep reasonably tight flumes and gates to prevent the waste of water. The company having sold all their remaining interest in the premises to the defendants, it is obvious that this clause was inserted in the deed for the benefit of the plaintiff, and to carry out the intention manifested in his deed from the company.

1. We maintain, therefore, that the instruction of the Judge to the jury, that the subsequent clause in the plaintiff's deed had reference to the use of the water by the grantor from the dam, and not from the factory flume, is erroneous.

2. That part of the instruction under consideration, while it expressly denies the right of the plaintiff to use the water to drive his machinery in the way and by the means employed at the date of his purchase, seems rather to admit that he may exercise the right and use the water for that purpose in some other way till it comes down to the lowest place in the dam as ascertained by the measurement of John Howe in 1848.

3. The next branch of the instruction, however, is still more objectionable, inasmuch as it gives to the defendants " the free and uninterrupted use and enjoyment of sufficient water at all times to drive the factory and machinery attached," wholly irrespective of any right in the plaintiff to use any portion of the water at all, whether it be high or low, either from the dam or factory flume.

Considering the fluctuation of the seasons, and the liability of running water to rise and fall, it cannot be said in respect to any water power on a small stream, that a part owner of the power has the free and uninterrupted use of the water, or any part of it, while another has the right, and exercises it, to draw the water from the same common reservoir, to operate another class of machinery.

4. Whatever right the plaintiff has to the use of the water of that stream, either from the dam or the factory flume, it must be considered as an interest in real estate, and his title thereto and the extent of that interest, must depend upon the terms and construction of his title deed. It is certain that it cannot be enlarged or diminished by parol proof.

Consequently, that part of the instruction which makes it dependent upon the question submitted to the jury, whether the use of the water by the plaintiff was detrimental in any practical degree to the operation of the factory, is erroneous. *Pitman* v. *Poor*, 38 Maine, 240.

Every other question was withdrawn from the jury, so that the verdict merely affirms the fact, that the use of the water by the plaintiff was in some practical degree detrimental to the works of the defendants.

That parol testimony is inadmissible to contradict, vary or add to the terms of a valid written instrument is a rule of law universally admitted. 1 Greenl. Ev., § § 275 and 297; *Countess of Rutland's case*, 5 Co., 26; *Gardiner Manf. Co.* v. *Heald*, 5 Maine, 385; Broom's Maxims, 469; *Deshon* v. *Porter*, 38 Maine, 293.

We do not deny that the plan was admissible, and any parol proof for the purpose of showing what was the actual

state of things on the land at the time of the conveyance by the company to the plaintiff. All such testimony is properly receivable, in aid of the words of the deed, and as affording the means of ascertaining the true intent and meaning of the parties. And there, we contend, the rule stops, and all the rest of the parol evidence should have been rejected.

5. Assuming that it is correct to look at the actual state of things on the land at the date of the conveyance to the plaintiff, we do not see how it is possible to conclude that the plaintiff has no interest in the factory flume.

The great purpose of the protection wall is the preservation of that flume, and the flume is connected with the dam in close proximity to the machinery of the plaintiff; and at the time of the conveyance was actually connected with that machinery by means of spouts and penstocks, constructed for the purpose, and in daily use to drive it. Such being the facts, the conclusion seems irresistible, that the gates and spouts attached to that flume passed to the plaintiff just as fully as the machinery itself; and if so, it follows, of course, that the right to use the water from that source also passed at the same time. *Davis* v. *Muncey*, 38 Maine, 94.

Thus far we have spoken of the right of property remaining in the company on the east side of the river after the execution of the deed to the plaintiff, as a reservation, and such we believe it to be according to the well established rules of law.

6. It may be said, however, that it is an exception, and not a reservation, and therefore it becomes necessary very briefly to notice the point in order to mark with distinctness the difference between an exception and a reservation.

It is stated by Sheppard, in his Touchstone, as follows:—
" A reservation is a clause of a deed whereby the feoffor, &c. doth reserve some new thing to himself out of that which he granted before. This doth differ from an exception; which is ever of part of the thing granted and of a thing *in esse* at the time; but this is of a thing newly created or reserved out

of a thing demised that was not *in esse* before." Sheppard's Touch. 80.

An incident to a grant may be the subject of a reservation. Thus, where one granted his land, reserving the streams of water and the soil under them with the right of erecting mill-dams, and all such parts of the land as should be overflowed with water for the use of mills for the grantor, it was held good as a reservation, though, considered strictly as an exception, it was void for uncertainty; and that as a reservation it was inoperative until the grantor exercised his right by erecting mill-dams, &c. *Thompson* v. *Gregory,* 4 Johns. 81; *Provost* v. *Calder,* 2 Wend. 517; 4 Kent's Com. 468; 1 Inst. 47, a.; *Case* v. *Haight,* 3 Wend. 632; *Cutter* v. *Tufts,* 3 Pick. 272; *Jackson* v. *McKenney,* 3 Wend. 233.

Where a mill site, falls and privileges were conveyed, "exclusive of the grist-mill," now on said falls, with the right of maintaining the same; it was held that this reservation included only the mill edifice, and not the fee of the land. *Howard* v. *Wadsworth,* 3 Maine, 471.

So, where land is conveyed reserving the building. *Sanborn* v. *Hoyt,* 24 Maine, 118.

Where land is conveyed, in general terms, an exception of any specific portion or quantity is valid and not repugnant. *Sprague* v. *Snow,* 4 Pick. 54; *Cutler* v. *Tufts,* 3 Pick. 272.

7. The following circumstances are necessary to make a good exception:—

I. It must be by apt words.

II. The thing excepted must be a part of the thing previously granted, and not of any other thing.

III. It must only be a part of the thing granted; for if the exception extends to the whole it will be void.

IV. It must be such a thing as is severable from the thing granted; and not an inseparable interest or incident.

V. It must be such a thing as that he who excepts may retain it.

VI. It must be of a particular thing out of a general one; not a particular thing out of a particular one.

VII. It must be certainly described and set down. 2 Greenl. Cruise, 348.

A moment's reflection will show that several essential elements of a good exception are wanting in the estate which remained in the company, after the execution of their deed to the plaintiff.

It is not severable from the estate granted.

It is merely an incident, and not the principal estate, and inseparable from the interest to which it is attached, and it is not described and set down so that it can be set apart and defined as separate property. Possessing, as it does, all the elements of a reservation, and none of the characteristics of an exception, it seems unnecessary further to argue the point.

8. The question propounded to H. R. Parsons called directly for the opinion of the witness, and should have been excluded.

There is not even a pretence that the witness is an expert, and yet he was permitted not only to express his opinion in matters constituting the very essence of the question submitted to the jury, but to state hypothetically what he would do on a supposed state of facts, which is never allowable in any case. *Palmer* v. *Pinkham*, 33 Maine, 32.

Be that as it may, what we most insist on here is, that the opinion of the witness was not admissible, for the reason that the case shows that he was not qualified to give it.

An expert, in the strict sense of the word, is a person instructed by experience. 1 Bouv. Law Dic.

Lord MANSFIELD held, in *Folkes* v. *Chadd*, 3 Doug. 157, "that it included all men of science, when called upon to speak of matters immediately connected with their especial study. The rule on this subject is stated by Mr. Smith, in his note to *Carter* v. *Boehm*, (1 Smith's Leading Cases, 544, * p. 286,) as follows:—"On the one hand," he observes, "it appears to be admitted, that the opinion of witnesses possessing peculiar skill is admissible, whenever the subject matter of inquiry is such, that inexperienced persons are unlikely to prove capable of forming a correct judgment upon

it without such assistance, or in other words, when it so far partakes of the nature of a science, as to require a course of previous habit or study, in order to the attainment of a knowledge of it; while, on the other hand, it does not seem to be contended, that the opinions of witnesses can be received, when the inquiry is into a subject matter, the nature of which is not such as to require any peculiar habits or study, in order to qualify a man to understand it."

9. Stephen Emery's testimony was admissible, and was improperly excluded.

10. The verdict is against the evidence in the case, and against the weight of the evidence.

11. The motion for judgment, notwithstanding the verdict, ought to prevail. *Bellows* v. *Shannon*, 2 Hill, 86; *Smith* v. *Smith*, 4 Wend. 486; 2 Arch. Prac. 261; *Schermerhorn* v. *Schermerhorn*, 5 Wend. 513; *Stoughton* v. *Mott*, 15 Ver. 162; *State* v. *Commercial Bank*, 6 S. & M. 218; *Sullenburgher* v. *Girt*, 14 Ohio, 204; *Shreve* v. *Whettlesey*, 7 Mis. 473; *Snow* v. *Conant*, 8 Ver. 309; *Smith* v. *Smith*, 2 Wend. 624; *Dewey* v. *Humphrey*, 5 Pick. 187; *Berry* v. *Borden*, 7 Blackf. 384; *Pomery* v. *Burnet*, 8 Blackf. 142; *Jones* v. *Fennimore*, 1 Green, (Iowa,) 134; *Pemberton* v. *Van Rensallaer*, 1 Wend. 307; *Hale* v. *Andros*, 6 Cowen, 225; 2 Tidd's Prac. 830.

*J. C. Woodman* for defendants.

The jury have found that it was not necessary for the plaintiff to take side spouts from the factory flume to propel his machinery, but only a small convenience; that, for the paltry sum of fifty dollars, the plaintiff could make a permanent alteration so as to take water for his purposes, from the sawmill flume, the grist-mill flume, or the main dam.

All the evidence and the plan are made part of the exceptions, and it appears from inspection of the plan, that the defendants could not draw the water for the factory in any other place, than through the old factory flume, while it remained; nor construct a new flume, in any other place, than substantially on the same ground as the old one.

In August, 1854, the old flume was worn out, and it was

necessary to build a new one to prevent waste of water. Woodman, True & Co. accordingly rebuilt the factory flume of the same size, and mostly on the same base, varying a trifle at the angle, with the consent of the plaintiff, to shorten the distance.

Woodman, True & Co. left no openings for the plaintiff to insert side spouts. The plaintiff cut an opening in the side of the new flume and inserted one of the side spouts. The defendant Woodman knocked it out and ordered the opening planked up; and the plaintiff insists that the other defendant was aiding and abetting.

The jury have found, that the use of these side spouts by the plaintiff, as generally used in the old flume, and as contemplated to be generally used in the new one, *was practically detrimental* to the operations of the factory.

What were the rights of the parties? Who owned the new flume? Had the plaintiff a right to cut into the new flume and insert his spouts? Or had Woodman, True & Co. a right to prevent it? What was the true construction of the deeds?

The defendants in the outset introduced a quitclaim deed from the plaintiff and his son, to Woodman, True & Co., by which they conveyed to the grantees all their " right, title and interest in and to all the estate, real and personal, conveyed by the South Paris Manufacturing Company by deed of even date," thereby " conveying to the above named grantees their joint and several interest in the premises and property described in said deed, which was given by said company to the above named grantees." Then they introduced the deed of the corporation referred to in said quitclaim deed. The effect of this reference from one deed to the other, is the same as if the descriptive words in the deed referred to were incorporated into the deed from the plaintiff and his son. *Foss* v. *Crisp,* 20 Pick. 123, 124; *Adams* v. *Hill,* 16 Maine, 219; *Lincoln* v. *Wilder,* 29 Maine, 169; *Thomas* v. *Patten,* 13 Maine, 329; *Lunt* v. *Holland,* 14 Mass. 151; *Proprictors of Kennebec Purchase* v. *Tiffany,* 1 Greenl. 223.

In the construction of the quitclaim, embracing as it does the other deed by way of description, it is first necessary to explain the ,phrase near the close: " *subject to all the duties, limitations and restrictions pertaining to the same, as by the deeds of the same will appear, reference being had thereto.*" " *The deeds of the same*" is plural, and cannot refer to the single deed from the corporation to the plaintiff; but it must refer to the deeds which conveyed the same property to the corporation, and it subjects said property to the same services to which it was subjected by those deeds. The deed to Hammond made the property conveyed to him subservient to the estate remaining. So it would be absurd to suppose the estate remaining in the corporation and conveyed to Woodman, True & Co. was made subservient to his.

The defendant Woodman, then, holds his title by deed directly from the plaintiff. It conveys a parcel of land, by boundaries, " with the buildings thereon, including the factory," " the grantees to keep reasonably tight flumes and gates used by them to prevent waste of water." The duties, limitations and restrictions imposed by the corporation on the defendants, could not have had any reference to the quantity or draft of the water through the flume, because in point of time they were imposed by the original owners on the corporation, prior to the construction of the factory or the factory flume.

The plaintiff's deed of the factory to Woodman, True & Co., *ex vi termini*, carried with it sufficient water power at all times to carry with full speed the wheels of the same; the right of way to conduct it; the existing way by which it was conveyed to the factory; and the right to enter and repair or build a new flume. All this passed as an incident without any reserve, except the obligation imposed to keep their flumes and gates reasonably tight. 1 Shep. Touch. 89; Angell on Wat. Cour. § 158; *Johnson* v. *Jordan,* 2 Met. 240; *New Ipswich Factory* v. *Batchelder,* 3 N. H. 190; *Stanwood* v. *Kimball,* 13 Met. 526, 532, 533, 534; *Blake* v. *Clarke,* 6 Greenl. 439; *Allen* v. *Scott,* 21 Pick. 29; *Elliot* v. *Shepherd,* 25

Maine, 371, 378, citing the maxim, *quando aliquis aliquid concedit, concedere videtur et id, sine quo res uti non potest.* *Pomfret* v. *Ricroft*, 1 Williams' Saunders, 323, note 6; *Netzel* v. *Paschal*, 3 Rawle, 76, 83; *Thayer* v. *Payne*, 2 Cush. 331; Angell on Wat. Cour. § 145.

I argue the same from the facts in the case and the nature of an easement and secondary easements, and the duties of the parties in relation to repairs. Angell on Wat. Cour. § 142; Gale & Whately on Easements, (American ed.,) 231; *Prescott* v. *Williams, Adm'r*, 5 Met. 434; *Prescott* v. *White*, 21 Pick. 341. The conveyance carried the existing flume, and the power to enter and repair or rebuild, as much as it did the water power. The easement was a privilege conferred on the defendants and forever without compensation. No obligation was imposed on the plaintiff to repair or rebuild the "factory flume." So if the defendants would occupy and enjoy the privilege of the flume, they were bound to repair or rebuild. Gale & Whately on Easements, 215; *Taylor* v. *Whitehead*, 2 Doug. 749, (reign of Geo. III.); *Prescott* v. *Williams, Adm'r*, 5 Met. 435; *Doane* v. *Badger*, 12 Mass. 69; *Jones* v. *Percival*, 5 Pick. 486. The language of the deed implies the same thing: " The grantees herein to keep reasonably tight flumes and gates used by them." The deed authorizes them to use a succession of flumes, and binds them to keep them reasonably tight. It must, then, necessarily authorize the defendants to build a flume. They did build the present flume with the plaintiff's consent. So it is their property. *Russell* v. *Richards*, 11 Maine, 374; *Hilborne* v. *Brown*, 12 Maine, 163.

Woodman, True & Co. may abandon their factory privilege for a time. In such case, they are not bound to build a flume for the plaintiff. If he would have reserved any thing in the old flume, he should have made an express reservation. If he would have bound Woodman, True & Co. to rebuild the flume for him, he should have so stipulated. *Atkins* v. *Boardman*, 2 Met. 462.

As the defendants hold their title from the plaintiff, they

hold just as much as though the description was incorporated in the plaintiff's deeds to them, and as though they had no deed from the corporation. The plaintiff cannot pray in aid his own deed, but the defendants may rely on the same. It is asserted in that deed, that "the said company shall maintain the bulkhead at the head of the factory flume." The deed is one of general warranty, and by this expression, the plaintiff is estopped to deny that *this flume*, that is to say, *the old one*, was built for the factory and reserved for the use of the factory. *Vickery* v. *Buswell,* 13 Maine, 292.

This deed to Hammond in express terms binds the corporation to maintain the bulkhead at the head of the factory flume, but does not in express terms bind the corporation to maintain the flume itself. It is therefore on their part a matter of choice. I refer to the 1st, 2d, 3d, and 6th rules for the construction of deeds. Shep. Touch. 86, 87. These rules all favor the construction of the deed from Hammond to W., T. & Co., as claimed by us. The conclusion follows, that the flume passed as an incident or easement, with a right to rebuild; but without any obligation on the part of Woodman, True & Co., to rebuild; and that as they did rebuild, the flume was their property, and the plaintiff had no right to tap it.

2. If the question must be settled on the construction of the deed to the plaintiff, the result would be the same. In the deed to him is this clause, "excepting also and reserving the right at all times to take and use water sufficient to drive the factory and machinery attached." This may be construed as an exception, if necessary to effectuate the intention of the parties. *Bowen & al.* v. *Cormer,* 6 Cush. 135; *Thompson* v. *Gregory,* 4 Johns. 82, 83.

"It is a rule that what will pass by words in a grant will be excepted by the same words in an exception, and it is another rule, that when any thing is excepted all things that are depending upon it are also excepted." 1 Shep. Touch. 100; Angell on Water Cour. § 173; *Cocheco Manufacturing Co.* v. *Whittier,* 10 N. H. 313; *Richard Lyford's case,* 11

Coke, 52; *Lord Dacey* v. *Askwith*, Hobart, 234; *Forbush* v. *Lombard*, 13 Met. 114; *Allen* v. *Scott*, 21 Pick. 25, 29; *Monio* v. *Edgerton*, 3 Taunt. 31; *Nicholas* v. *Chamberlain*, Cro. James, 121; *Bowen & al.* v. *Cormer & al.*, 6 Cush. 132; *Rackley* v. *Sprague*, 17 Maine, 285; same case, 19 Maine, 344, 346; *Pettee* v. *Hawes*, 13 Pick. 323, 326; *Sprague* v. *Snow*, 4 Pick. 54, 56; *Choate* v. *Burnham*, 7 Pick. 274, 277; *Howard* v. *Lincoln*, 13 Maine, 122, 124; *Maine* v. *Stone*, 4 Cush. 146, 147; *Farmer* v. *Platt*, 8 Pick. 338, 340. In order to ascertain what is granted in the case of an exception to a deed, it must first be ascertained what is included in the exception; for whatever is included in the exception is excluded from the grant, according to the maxim laid down in Co. Lit. 47, a. *Poterit enim quis rem dare, et partem rei retinere, vel partem pertinentiis, et illa pais quam retinet semper cum eo est, et semper fuit.* Angell on Wat. Cour. § 174; *Greenleaf's Lessee* v. *Birth*, 6 Peters, (U. S.) 310. According to all these cases, the reservation in the deed to Hammond may be considered an exception; and we must first ascertain what was included in the exception or reservation in order to ascertain what was conveyed. Moreover it is clear from them, that whatever was necessary to the most full and complete enjoyment of the right excepted or reserved, was also excepted or reserved. According to these principles the reservation or exception of the water, was a reservation of the right of way, the existing flume, and the right to enter and repair or build a new flume. Accordingly Woodman, True & Co. did build the new flume. I invoke the 4th and 5th rules upon the construction of deeds in addition to the 1st, 2d, and 3d, already cited. 1 Shep. Touch. 87. This course of reasoning shows that the reservation in Hammond's deed gives us the same as we claim by virtue of his quitclaim deed.

I now proceed to enforce these reasons upon a construction of the whole deed. The Judge instructed the jury, " that the subsequent clause in the deed [that is to say, the last two sentences in the premises of the deed, standing immediately before the habendum,] had reference to the use of the water by

the grantee from the dam, and not from the factory flume." This was strictly correct. That clause applies to the whole of the machinery, the grist-mill as well as the rest, and even any other machinery that Hammond may put on the falls; but it is not said through what flume. But this clause, in connection with the evidence and verdict, is important to show that the plaintiff was not to feed his corncracker and shingle machine from the factory flume. The jury have found that the use of the water taken by these side spouts, as generally used by the plaintiff during the continuance of the old, and as contemplated by him generally to be used from the new flume, was practically detrimental to the operations of the factory, whether the water ran over the dam or not. That is, the use of these side spouts generally impeded the speed and usefulness of the factory, when the dam was full. Then the plaintiff had no right to use them.

Again, the deed provides, " that said company are to maintain the bulkhead at the head of the factory flume." By this deed, being one of general warranty, both parties are estopped. Here is a statement of the plaintiff that this flume belonged to the factory. *Vickery* v. *Buswell*, 13 Maine, 292; *Case* v. *Haight*, 3 Wend. 362; *Stowe* v. *Wise*, 7 Conn. 220.

This deed, on the face of it, is a deed where the rights of the parties are strictly defined. The corporation has a right at all times to take and use sufficient water to drive the factory and machinery attached. The plaintiff has a right to run the saw-mill till it comes down to the lowest point of the dam and then stop. Thirdly, the plaintiff has a right to run his machinery afterwards, but not in such a manner as to impede the speed and usefulness of the factory. It being found that he cannot run it after that, nor even so long, without impeding the speed and usefulness of the factory, if he use these side spouts, it results that he cannot use them, but must get his water in some other way. The burdens are also strictly defined. In such a deed, no burden can be thrown upon either party, for the benefit of the other, unless it be stipulated in the deed. *Expressio unius, exclusio alterius.* If the defend-

ant would enjoy the flume he must keep it in repair. Being bound to repair and build it, it was his property. This consideration is strengthened by the fact that 110 feet of it was below the lower of these side spouts. Nor is there any foundation for the suggestion that the plaintiff and Woodman, True & Co. owned this flume in common. The corporation, or Woodman, True & Co., would have no cause of complaint, if Hammond removed all his mills and his flume. But if he did not maintain the bulkhead at the head of the grist-mill, or one quarter part of the dam, or one quarter part of the protection wall, they would have a right to complain. So Hammond will have a right to complain if they do not maintain the bulkhead at the head of the factory flume, or their share of the dam or the protection wall. But they may remove their factory, and that portion of the factory flume below the lower side spout, and then all the rest of it, and the plaintiff will have no right to complain.

If we are right thus far, then it is for the plaintiff to show that there was an exception out of the reservation, that was made in favor of the South Paris Manufacturing Co. of the right of way, the existing flume, and the new flumes, that the corporation should build, and that said exception was of a right to take water from the factory flume for his wheels. He should show by the deed an obligation imposed on the corporation to build and maintain the flume forever and permit him to insert his spouts and draw water in that way. This the plaintiff cannot show.

But it is said, that the water had been drawn in that way before, and therefore the exception and burden or condition arise by implication of law. We answer, that this is a deed where the rights and duties of the parties are strictly defined. The following authorities show that nothing passes or is excepted under such a deed, with rights and duties strictly defined, unless it is mentioned in the deed; or unless it exists at the time, is absolutely necessary to the enjoyment of the estate and a necessary incident thereof. Angell on Water Cour. § § 165, 166; *Holmes* v. *Giving*, 2 Bing. 76; *Howell*

v. *McCoy*, 3 Rawle, 256, 271; *Gaitty* v. *Bethune*, 14 Mass. 54; *Grant* v. *Chase*, 17 Mass. 445; *Manning* v. *Smith*, 6 Conn. 289; *Whally* v. *Thompson*, 1 B. & P. 37 and note; *Johnson* v. *Jordan*, 2 Met. 238, 241, 242; *Thayer* v. *Payne*, 2 Cush. 331, 332; *Kent* v. *Waite*, 10 Pick. 141.

The jury having found that for the small sum of fifty dollars the plaintiff could be forever accommodated, without tapping the factory flume, we say that it was not necessary for the plaintiff to draw the water for his wheels in that way. The Court are authorized to draw that conclusion as an inference of law. *Howe* v. *Huntington*, 15 Maine, 350; *Thorn* v. *Rice*, 15 Maine, 263; *Kingsly* v. *Wallis*, 14 Maine, 57; *Hill* v. *Hobart*, 16 Maine, 164; *Green* v. *Dingley*, 24 Maine, 131; *Attwood* v. *Clark*, 2 Greenl. 249. It is said in some of the cases, "that a distinction is to be taken between an easement that is merely convenient, and easements that are necessary. The latter pass by grant of the principal thing, but not the former." The same rule would apply to an exception or reservation. The right to build flumes was excepted, by the exception of the water power, because it was absolutely necessary; but the right for the plaintiff to tap those flumes was not excepted from the reservation, because it was not necessary, but only a small convenience.

But it is said, this right to take the water by side spouts from the factory flume passed as one appurtenance to the grant, because the spouts existed at the time. The question is not applicable to our main argument, which treats the plaintiff as the bargainer of W., T. & Co.

To the objection pressed upon us at this point, while we are endeavoring to maintain the defendant's right from a construction of the deed to the plaintiff, several answers can be given. One has already been given. The plaintiff would have no right to use these side spouts, because the jury have substantially found that they impede the speed and usefulness of the factory, when the water runs over the dam.

A second answer is this. — The plaintiff does not take his mills as a principal subject of grant with incidents and ap-

purtenances. He takes a parcel of land with metes and bounds, with a certain reservation and exception. We have seen that the rule for construing such a deed, is to ascertain what is reserved. Whatever is excepted or reserved is excluded from the deed. In this case we have seen that the existing flume, and the right to build new flumes, was reserved as an incident. From that reservation there is no exception, and upon it there is no condition imposed in the plaintiff's favor. The reason why the flume, or interest in it, did not pass to the plaintiff was not because an easement in a flume will not pass as appurtenant to a corncracker or a shingle machine; but because, by a paramount rule of construction, the whole flume, free and unburthened, was included in the reservation for the corporation. The plaintiff took only that which was not reserved. Therefore, he cannot have the flume, nor any interest in it. When there are two rules of law, that in their application to a question are conflicting, the less important must give way. *Cushman* v. *Downing*, 29 Maine, 462. There remains yet one more answer.—"An appurtenance will not pass any corporeal real property." Bouvier's Law Dict. "Appurtenancy," 2d definition. Much less will it pass property that does not exist. If Hammond took a right even to draw water from the existing factory flume, it could only exist during the life of that flume. There could be no appurtenance of a right to draw water from a flume that did not exist, and might never exist. So Hammond could have no right in the new flume. *Ballard* v. *Butler*, 30 Maine, 97 and 98.

*Walton* replied to *Mr. Clifford.*

TENNEY, C. J.—Prior to June 29, 1849, the South Paris Manufacturing Company were seized and possessed of certain real estate, situate on the east side of the Little Androscoggin river, and on the north and south sides of the road which crosses the same in South Paris. On the north side of the road were standing and in operation, a grist-mill, saw-mill and shingle machine; and on the south side were situated the

company's factory and other buildings connected therewith, also in operation. The only dam, for the purpose of raising a head of water to work the mills and the factory, was on the north side of the road, and above the grist-mill, saw-mill, &c. There was a protection wall on the easterly side of the river, running parallel therewith, evidently regarded as useful for the security of the mills and the factory, against the operation of the water, as it flowed down the river.

At the time referred to, the factory was supplied with water from the dam, taken through a flume of considerable length, across the company's land above the road, and under the bridge across the river. In this flume spouts had been inserted, through which water had been taken to carry a corncracker in the grist-mill, and also the shingle machine, standing above the road.

On the day before named, a deed to the plaintiff, and purporting to have been executed by the agent of the company, and who, it is insisted by the plaintiff, was duly authorized to make an effectual conveyance, was given of all the real estate belonging to the company, which lay on the northerly side of the road, viz.: the grist-mill, saw-mill, factory store, shingle machine, and all the apparatus and utensils thereto belonging. Then follows in the deed a description of the land by metes and bounds, with the exception of certain buildings standing thereon, but not of the land covered thereby. "Excepting also and reserving the right at all times, to take and use water sufficient to drive the factory and machinery attached. Said Hammond is to maintain one quarter part of the dam across said river, and the bulkhead at the head of the grist-mill, and one quarter part of the protection wall; and the said company are to maintain the bulkhead at the head of the factory flume, and one-half of the dam across the river. Said Hammond is to use the water to drive his mills, and any machinery, at all times, until it comes down to the lowest place in the dam, as ascertained by the measurement of John Howe in the year 1848, and then the saw-mill is to stop. But he is also to have the right to

use the water after that, so long as he can do it without impeding the speed and usefulness of the factory."

On Nov. 20, 1852, the company conveyed to Woodman, True & Co. all the real estate owned by it, at South Paris, that lay on the east side of the river, and on the south side of the road, excepting, &c., bounded, &c., together with the buildings thereon, including the factory store, boarding house, dry houses, &c.; also all the machinery and manufacturing utensils and apparatus, of every kind, pertaining to the manufactures there carried on, and now used, together with all the water privileges on the east side of said river, owned by said company, subject to all duties, limitations and restrictions pertaining to the same, as by the deeds of the same will appear, reference being had thereto; the grantees herein to keep reasonably tight flumes and gates used by them to prevent waste of water.

On the day of the date of the deed last referred to, the plaintiff and Albert M. Hammond conveyed to Woodman, True & Co., all their right, title and interest in and to all the estate, real and personal, conveyed by the company, by deed of the same date, thereby conveying to the grantees their joint and several interest in the premises and property described in the deed of the company to the grantees.

The plaintiff alleges in his writ, that he was seized of the interest conveyed by the company on the day of its deed to him, and so continued to the day of the commencement of his suit; and also that, since June 29, 1849, he has been accustomed to use the water running in the river, by taking the same from the flume leading from the dam down stream under his grist-mill to the factory, by means of or through a penstock or water spout, extending from said flume to his water wheel, said wheel having been built for the purpose of carrying his shingle machine, said wheel and shingle machine being in use, in manner aforesaid, when the mills were conveyed to him; and he was further accustomed, since the time aforesaid, to take and use the water from the factory flume, for the purpose of driving a corncracker, circular saw and

turning lathe, being in his grist-mill and connected with a water wheel standing under the same, which wheel was driven by means of water, which the plaintiff had a lawful right to take, and has been accustomed to take from the factory flume, through a small flume adjoining thereto; and the plaintiff avers that he was lawfully seized of the right to take and use the water running in the river, in manner aforesaid, and for the said purpose, at all times without hindrance.    Then follows the allegation that, on August 15, 1854, the defendants unlawfully and without right, tore away the penstock or water spout, and his said flume connected with the factory flume, and refused to permit the plaintiff to take and use the water running in the river, for the use of his shingle machine, and his machinery aforesaid, and has stopped up the passages for the flowing of said water from the factory flume upon the plaintiff's wheels, and has so kept the passages stopped to the time of the institution of this suit.    The defendants severally plead the general issue, and in brief statements, with allegations in defence, deny the right of the plaintiff to insert in the factory flume the spouts and to draw water from the factory flume, which is alleged to belong to Woodman, True & Co.    And it is also alleged that, before the plaintiff's spouts were cut off from the factory flume, he was requested to take the same away, but refused to do so.

Evidence was introduced by the parties upon the issues before the jury; and the Judge instructed them, that the deed of the company to the plaintiff, of June 29, 1849, conveyed to him in fee, the real estate described, subject to the reservation, "excepting also and reserving the right at all times to take and use water sufficient to drive the factory, and the machinery attached;" that the subsequent clause in the deed had reference to the use of the water by the grantee from the dam, and not from the factory flume; that the deed from the company, and the deed from the plaintiff to Woodman, True & Co., of Nov. 20, 1852, conveyed to the grantees, the fee in the real estate therein described, including the factory, together with the reservation in the first deed contained;

and the reservation secured to Woodman, True & Co., the free and uninterrupted use and enjoyment of sufficient water at all times to drive the factory and machinery attached, and for such purposes they had the right to repair, or rebuild, when necessary, the factory flume; that however convenient it might be for the plaintiff to use the water from the factory flume, for propelling the wheels attached to his shingle machine and corncracker, yet if the use of the water so taken from the flume as generally used by the plaintiff during the continuance of the old, and as contemplated by him generally to be used from the new flume, was detrimental in any practical degree to the operations of the factory, such use would be inconsistent with the free enjoyment of the reservation, and the defendants were justified in taking the spouts from the new flume, and preventing the plaintiff from inserting either spout therein. But, if such was not detrimental in manner before stated, then the defendants were not justified in so doing and would be liable to the plaintiff, &c.

The jury returned a verdict for the defendants; and they found also, that it was practicable for the plaintiff to take water for his shingle machine and corncracker wheels from either his saw-mill, grist-mill flume, or from the main dam, without interfering with the factory flume; and that such permanent alteration could be made for the sum of fifty dollars.

It is a well settled rule of construction, that the grant of a principal thing shall carry with it every thing necessary for the beneficial enjoyment of that which is granted, and which the grantor has the power to convey. *Thayer* v. *Paine & al.*, 2 Cush. 327.

" By the grant of mills, the waters, floodgates and the like, that are of necessary use to the mills, do pass." Sheppard's Touch. 89.

Where a party has erected a mill on his own land, and cut an artificial canal for a race way through his own land, and then sells the mill without the land, through which such race way passes, the right to such race way shall pass as a privilege annexed *de facto* to the mill and necessary to its beneficial

use. *Johnson* v. *Jordan,* 2 Met. 234; *Blake* v. *Clarke,* 6 Greenl. 439; *New Ipswich Factory* v. *Batchelder,* 3 N. H. 190; *Nichols* v. *Luce,* 24 Pick. 102.

Before the conveyance of the company to the plaintiff, the flume to the factory had been prepared and used as the only mode of conducting the water to the factory for the purpose of driving the machinery therein; and it is not suggested that any other mode was referred to, or contemplated by the parties; but the flume *is treated in the* deed as the passage-way of the water, which was to remain for the use of the factory. The dam above the plaintiff's mills, and the protection wall, were evidently designed to be for the common benefit of both parties to the deed; hence the propriety of their being kept up, and in repair, at the expense of both, though in unequal proportions, probably on account of the unequal value of the interests owned by each party, respectively. The bulkheads at the heads of the grist-mill and the factory flumes were to be maintained in severalty, clearly indicating that one was principally, if not exclusively, for the use of one party and the other for the other. The deed of the company to Woodman, True & Co., of Nov. 20, 1852, imposed upon the grantees the burden of keeping the flumes and gates used by them reasonably tight to prevent waste of water.

The factory flume, — upon the examination of all the deeds in the case, to which the plaintiff is in effect a party, and from a construction to be given from an examination of all parts thereof, — was a necessary part of the factory itself, and the right therein was reserved to the company, and passed to Woodman, True & Co., as appurtenant thereto. Co. Litt. 121, (b) and 122, (a); 1 Ven. 407.

If a lessee for years of a house and land erect a conduit upon the land, and after the time is determined, the lessor occupies them together for a time, and afterwards sells the house with the appurtenances to one, and the land to another, the vendee shall take the conduit and pipes, *and the liberty to amend them.* *Nicholas* v. *Chamberlain.* Cro. James, 121.

When the use of a thing is granted, every thing essential to that use is granted also.  Such right carries with it the implied authority to do all that is necessary to secure the enjoyment of such easement.  *Prescott* v. *White*, 21 Pick. 341; *Prescott* v. *Williams, Adm'r*, 5 Met. 429, and cases cited; *Pomfret* v. *Recroft*, 1 Ware's Saunders, 323, note 6.

The instruction to the jury, that for the purpose of the enjoyment of sufficient water at all times to drive the factory and machinery attached, Woodman, True & Co. had a right to repair, or rebuild when necessary the factory flume, was legally correct.

The provision in the deed of the company to the plaintiff, touching his rights to the use of water at different conditions of the river, had reference to the amount secured to him, of that which should be confined for the use of the mills and the factory, and not to the manner *in* which, or the place *from* which it should be taken.  The instruction therefore, that the subsequent clause in the deed had reference to the use of the water by the grantee from the dam and not from the factory flume was strictly correct.

The reservation in the deed of the company to the plaintiff of the right at all times to take and use water sufficient to drive the factory and machinery attached, as between the parties thereto, is as effectual to secure to the company the right reserved, together with the easement and servitude so as to charge the lands of the plaintiff, as by a deed from the owner of land to be charged, granting the same as appurtenant to other estate of the grantee.  *Bowen & al.* v. *Cormer*, 6 Cush. 132.  Especially must it be so here, where the plaintiff himself conveys by his own deed the whole interest reserved.

It is not perceived that the reservation referred to in the deed of the company to the plaintiff, is any less strong in its effect, than the right " to the free and uninterrupted use and enjoyment of sufficient water at all times to drive the factory and machinery attached."  The principal thing secured is *sufficient* water *at all times* for the purpose expressed.  If this

were not free and uninterrupted in its enjoyment, it cannot be said that sufficient could be taken *at all times.*

The plaintiff's counsel, however, insists, that as he had the right to drive his mills at all times until the water is reduced to the lowest place in the dam, as ascertained by the measurement of John Howe in the year 1848, the Judge erred in informing the jury that the reservation secured to Woodman, True & Co. the free and uninterrupted use and enjoyment of sufficient water, at all times, to drive the factory and machinery.

It cannot be doubted that, by the deed of June 29, 1849, it was the design of the parties thereto, that the rights of the plaintiff should in some respects be subordinate to those of the company in the use of the quantity of water. When it was down to the mark made by Howe, the saw-mill was not permitted to run; manifestly for the reason, that its running would retard the operations of the factory. And after the saw-mill had ceased to work, the plaintiff could use the water only so long as it did not impede the speed and usefulness of the factory.

But the grounds for allowing the plaintiff's mills and the company's factory to run at all times, when the water was above the mark in the dam, was undoubtedly that it had been satisfactorily ascertained that, until such reduction of the quantity of water in the dam, it was sufficient to drive all the machinery belonging to both parties, and at all times. At any rate, to give a reasonable construction to the deed, it must have been so understood by those interested, at the time of its execution; and such supposed state of facts has not been attempted to be disproved.

It does not appear that the instructions to the jury upon this branch of the case, were based at all upon any supposed controversy between the parties, that the quantity of water taken by Woodman, True & Co., was or was not greater than that which under the deeds they were entitled to use. The suit is certainly not for the defendants' having taken a greater

amount of water than was secured to them; or for preventing the plaintiff from using, at all times, the amount of water which belonged to him; but it is for preventing him from taking it from the factory flume through his spouts, and cutting the spouts off therefrom, without regard to the *quantity* of water so taken. And the instructions to the jury, that Woodman, True & Co. were secured in the free and uninterrupted use and enjoyment of sufficient water, at all times, to drive their factory, must have had reference to the question really involved, which was whether the taking of the water by the plaintiff from the factory flume, through the spouts, was inconsistent with the rights of Woodman, True & Co., under the reservation in the deed. These instructions, when taken in connection with those which follow, and applied to the issues presented, are not perceived to be erroneous.

The factory, and all the appurtenances belonging to it, were retained by the company when it conveyed the mills on the north side of the road, with the reservation touching the use of the water for the factory. The property so retained, having come to Woodman, True & Co., they stand in the place of the company, at least. The factory flume being necessary to the operation of the factory and the machinery attached for the passage of the water, and no right secured by the deed to the plaintiff to take water therefrom for the use of his own mills, any withdrawal of the water through the spouts, detrimental in any practical degree to the operations of the factory, must necessarily be unauthorized by the deed. If the plaintiff could with impunity take water in that manner, to the interruption of the rights of Woodman, True & Co., to the least practical degree, it is not perceived that any limit exists to a further use, which might be extended indefinitely, and to the destruction of the rights reserved for the operations of the factory.

But it is insisted for the plaintiff, that at the time when the conveyance was made to the plaintiff, and afterwards to Woodman, True & Co., the corncracker and shingle machine were carried by water taken from the factory flume by means

of, or through spouts; and hence it must be presumed that it was intended by the company, and the plaintiff, and by Woodman, True & Co., that the right so to take water for the purposes designed, was reserved to the plaintiff by acquiescence of other parties interested.

· It is to be considered that the property in the mills, and the factory and the lands connected with each respectively, was entirely that of the company, prior to the deed to the plaintiff. The manner in which the water was taken to be applied to one part or the other, depended upon no fixed legal rights, but might be taken and used not only as necessity, but as convenience or pleasure dictated. The jury have found that the water was taken from the factory flume through spouts, to propel the shingle machine and corncracker, not from necessity, or even to save any considerable expense. And hence the manner adopted in taking and applying the water to the different parts, would not continue as matter of title, after the division, unless under some stipulation in the deed or other instrument under seal. The factory flume would be appurtenant to the factory exclusively, unless it became necessary to take water therefrom for the use of the plaintiff's machinery, which he had a right to operate, or unless, according to the instructions, it could be taken without being practically detrimental to the rights of Woodman, True & Co. The remarks of SHAW, C. J., in the case of *Stanwood* v. *Kimball & als.*, in relation to a pipe taken from the defendants' aqueduct, which they had cut off, and which cutting off was the cause of the action, are in point, it being in that case contended for the plaintiff, that it must be presumed that he designed to reserve that right, and the defendants acquiesced in it. "But it is difficult to maintain this position. There can be no right by reservation, whatever may have been the interest or expectation of the plaintiff, for there is none made in the deed, and it is not competent to prove it by parol evidence; nor by grant, for none is shown or pretended; nor by prescription, for it was used a very short time."

Several questions are presented in the exceptions on account of the rulings of the Judge in admitting and rejecting evidence offered.

The inquiry made of Stephen Emery by the plaintiff, for the purpose of showing no consideration for the deed of the plaintiff to Woodman, True & Co., was clearly inadmissible. The deed purported to be for consideration, and it could not be contradicted by the plaintiff, who was the grantor, and the deed was effectual without consideration between the parties thereto.

Alden Palmer, a witness for the defendants, was allowed to answer the following question, against the objection of the plaintiff, — "What would be the effect of opening and shutting the gates of the plaintiff's shingle machine and corncracker, upon the water in the factory flume, and upon the machinery in the factory?" The answer was, that the effect would be to produce a motion in the water of the flume, so that it would flow up towards the gate of the factory or recede from it, and give extra motion or retard the wheels of the factory for a short time. The right to put the question and receive the answer was upon the ground that the witness was an expert, or one experienced. It was in evidence, that the witness was a mill-wright and professed to be a civil engineer; had been employed in the construction of mills and factories for forty years. It cannot be doubted, from this evidence, he might well be treated by the Court as an expert and entitled to give his opinion touching a matter, so connected with his experience.

Henry R. Parsons was asked a question in reference to the place where it would be proper to take the water for the shingle machine and corncracker wheels. Objection was made, on the ground that he was not an expert. It appeared that he had carried on the fulling-mill and two carding machines for twenty years in the same place; that he had used spouts for the purpose of propelling machinery; that he has owned mills and been acquainted with them for thirty years. He

must have been experienced in business having relation to the question proposed, and the question was unobjectionable.

The evidence before the jury was such, that their verdict and special findings do not appear to the Court to have been the result in any degree of those influences, or misapprehensions of the facts, which authorize a Court to disturb a verdict.                    *Motion and Exceptions overruled.—*

*Judgment on the verdict.*

RICE, CUTTING and APPLETON, J. J., concurred.